Jeremy L. Bordelon, OSB No. 160789
jeremy@evergreendisability.com
Evergreen Disability Law
465 Northeast 181st Ave., No. 500
Portland, Oregon 97230
(503) 888-9331
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| RANDY WITT,<br>      Plaintiff,<br><br>v.<br><br>the INTEL CORPORATION LONG-TERM DISABILITY PLAN,<br><br>      Defendant. | Civil No. 3:23-cv-01087<br><br>COMPLAINT FOR ERISA BENEFITS |

Plaintiff, Randy Witt, makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to provide long term disability (LTD) benefits due under an ERISA employee benefit plan, and for Defendant's other violations of the Employee Retirement Income Security Act of 1974 ("ERISA"):

### JURISDICTION AND VENUE

1.      This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)).  Plaintiff's claims "relate to" an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. § 1001 et seq. and the subject benefit plan or plans constitute a "plan under ERISA."

2.      The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of

benefits denials. In this case, the plan's mandatory appeals are deemed exhausted by operation of law and this matter is now properly before this court for judicial review.

3.	Venue is proper within the District of Oregon pursuant to 29 U.S.C. § 1132(e)(2), as the district in which the breach took place. Specifically, Plaintiff resided in this district at the time defendants failed to deliver benefits due to him.

## PARTIES

4.	Plaintiff, Randy Witt (hereinafter, "Mr. Witt" or "Plaintiff"), is currently a resident of Washington County, Oregon.

5.	Defendant the Intel Corporation Long-Term Disability Plan ("the Plan" or "Defendant"), is an employee welfare benefit plan sponsored by Intel Corporation and funded out of Intel Corporation's general assets. The Plan may be served by and through its Plan Administrator, the Intel Corporation Benefits Administrative Committee, at the following address listed in the plan documents:

> Intel Corporation
> Plan Administrator, BAC
> Attn: Cathy A. Arias - RNB-5-127
> 2200 Mission College Blvd.
> Santa Clara, CA 95054

## FACTS

6.	Plaintiff was employed by Intel Corporation ("Intel").

7.	Plaintiff's "own occupation" for Intel was as a Software Development Engineer.

8.	According to a job description questionnaire Plaintiff's supervisor completed in connection with his disability claim, the requirements of Plaintiff's own occupation included the following "essential functions": Concentrate on work tasks 40 hrs/week,

perform complex mathematical calculations, follow and comprehend verbal and written instructions, make independent decisions/judgments, synthesize complex information, collaborate with others, and timely complete sensitive projects, among others.

9. By virtue of his employment, Plaintiff was covered by the Plan.

10. The provision of group disability insurance coverage to employees of Intel constitutes an ERISA welfare benefit plan.

11. Plaintiff ceased work for Intel on or about June 28, 2021 due to symptoms of idiopathic hypersomnia, as well as other conditions.

12. Idiopathic hypersomnia is a condition similar to narcolepsy, although without sudden onset of sleepiness. Plaintiff's principal symptoms from this condition are extreme difficulty in sleeping for extended periods at once, with corresponding sleepiness during the day. This often leads to an inability to focus, a need for naps, and irritability.

13. When Plaintiff ceased work he was covered under the terms of the Plan.

14. Plaintiff timely applied for short term disability (STD) benefits under the relevant Intel disability plan.

15. Reed Group serves as claims administrator for claims under both the Intel Short-Term and Long-Term Disability Plans.

16. Reed Group approved the maximum one year of STD benefits available under that plan for Mr. Witt's disability.

17. As part of the STD claim consideration process, Reed Group sent Mr. Witt for an in-person examination with A. Wayne Hurty II, MD, an internal medicine doctor based in Portland, Oregon.

18.     Dr. Hurty examined Mr. Witt on April 8, 2022, and examined records concerning Mr. Witt's medical condition at the same time.

19.     Based on his examination of the records and of Mr. Witt himself, Dr. Hurty found that Mr. Witt *did have* limitations preventing him from performing his own occupation for Intel. According to Dr. Hurty, "the most consistent single element of supporting evidence for this is the MSLT[1] performed in 2018 and the only 230 seconds in sleep duration and also inability to achieve REM sleep. This is going to lead [to] an individual in extreme hypersomnolence, and it is consistent with what he describes clinically."

20.     Dr. Hurty also stated that Mr. Witt may have periods where he is able to perform the duties of his occupation for Intel, but that there would need to be accommodations in place allowing Mr. Witt to have "potentially naps and not require long duration of high intensity cognitive performance."

21.     Reed Group also approved approximately three months of LTD benefits after STD benefits were exhausted, providing benefits to Mr. Witt for June 27, 2022 to September 30, 2022.

## Claim Denial

22.     By letter dated September 20, 2022, Reed Group denied Mr. Witt's claim for additional benefits, stating that it did not find him disabled beyond September 30, 2022.

23.     Reed Group stated two reasons in its denial letter for terminating Mr. Witt's benefits as of October 1, 2022. First, it stated that Mr. Witt had not been adhering to the treatment plan outlined by his provider. Second, it stated that it had consulted with a

---

[1] Multiple Sleep Latencies Test.

PLAINTIFF'S COMPLAINT                                4

neuropsychologist, Annette Swain, Ph.D., who found that Mr. Witt's "secondary psychiatric or cognitive issues" were not functionally impairing.

24. There is, in fact, no indication that Mr. Witt ever failed to follow a treatment recommendation from any of his providers.

25. Dr. Swain did not meet with Mr. Witt. She did speak with one of his providers, Dr. Adam Frederick, who stated that Mr. Witt's cognitive problems were related to his sleep disorder, and not to his diagnoses of anxiety and depression. Dr. Swain then stated in the body of her report that she could only comment on cognitive disorders and psychological effects, and *not* on any mental effects of Mr. Witt's sleep disorder. She specifically stated that she would "defer to a sleep specialist regarding the presence of functional impairments due to what appears to be his fundamental issue" (his sleep disorder).

26. Reed Group did not consult with a sleep specialist before denying Mr. Witt's claim.

27. Reed Group also did not discuss or address in any way the prior findings of its IME examiner, Dr. Hurty, who stated in connection with the STD claim that Mr. Witt was disabled from his own occupation.

28. For the first two years of LTD benefits, from June 27, 2022 to June 26, 2024, the standard for receiving LTD benefits is effectively the same as it is for STD benefits - medical inability to perform one's own occupation.

29. Reed Group's denial of LTD benefits as of October 1, 2022 was wrong, unsupported by substantial evidence, and arbitrary and capricious.

///

///

## Claim Appeal

30. Mr. Witt appealed Reed Group's denial of his LTD claim by letter dated May 25, 2023. The letter was faxed to Reed Group on that date with most of its supporting evidence. Two larger sets of supporting medical records were sent with the mailed hard copy of the letter.

31. Reed Group received the faxed copy of the appeal letter on May 25, 2023. Reed Group received the mailed hard copy approximately one week later.

32. The effective date of Mr. Witt's appeal was May 25, 2023.

33. Mr. Witt's appeal was timely.

34. In support of his appeal, Mr. Witt provided ten exhibits, including five sets of supportive medical records, three opinions from treating providers endorsing disabling symptoms, a witness statement from the claimant's live-in partner, and a statement from the claimant himself discussing his symptoms.

35. Primary care provider Dr. Frederick wrote that Mr. Witt "has poor processing… and loses track of the days." "His extreme fatigue/sleepiness requires frequent sleep even in the work day. When he is feeling this sleepiness he can't focus or concentrate well enough to complete complicated tasks needed at work." Dr. Frederick estimates Mr. Witt would be "off task" in the workplace 85% of the time.

36. Mr. Witt's treating psychologist Dave Fischer, Ph.D., stated in his opinion that Mr. Witt could not perform any of the mental requirements of his own occupation listed above in paragraph 8 on a reliable, sustained basis over the course of a 40-hour work week. He

added that "Randy's functional abilities are simply unreliably and unsustainable. He can function in work-related ways, just not in a predictable way."

37. Under the ERISA claims regulations the Plan had forty-five (45) days to decide the appeal of Mr. Witt's claim.

38. Forty-five days from May 25, 2023, when Reed Group received Mr. Witt's appeal, is Sunday, July 9, 2023.

39. Reed Group did not make a decision on Mr. Witt's appeal by July 9, or by the next business day, Monday, July 10, 2023.

40. On Wednesday, July 12, 2023, Reed Group faxed a letter stating its need for an extension of time to decide the appeal.

41. The ERISA claims regulations state that disability administrators may take an extension on appeals of up to an additional 45 days, in the event of "special circumstances" which are "beyond the control of the plan." 29 C.F.R. § 2560.503-1(f)(3).

42. The ERISA claims regulations also state that the administrator's notice of extension must be given *before* the expiration of the initial 45-day decision period. 29 C.F.R. § 2560.503-1(i)(1)(i), (i)(3).

43. The U.S. Department of Labor, which regulates ERISA plans, has stated that such extensions "are not automatic entitlements" and "may be imposed only for reasons beyond the control of the plan." ERISA Rules and Regulations for Administration and Enforcement; Claims Procedures, 65 Fed. Reg. 70,246, 70,250, 2000 WL 1723740 (Nov. 21, 2000).

44. Reed Group's extension letter stated that it had "received" Mr. Witt's appeal on May 31, 2023, and that therefore "3 days of the original 45-day determination period remain." According to this letter, the extension was required "due to awaiting the results of independent physician review."

45. On the same day, July 12, 2023, Mr. Witt wrote back to Reed Group, stating that Reed Group had actually received his appeal on May 25, 2023 via fax, along with most of the supporting evidence, and that the extension notice was too late to be effective.

46. Mr. Witt's July 12 letter also stated that he did not consider the need for a medical review to be a "special circumstance" beyond the administrator's control, since a medical review is a legal requirement of every ERISA disability claim.

47. Pursuant to 29 C.F.R. § 2560.503-1(l)(2)(ii), a claimant may request a written explanation of a procedural violation from the plan, and the plan must provide such an explanation within ten days, including a specific description of its bases, if any, for asserting that the violation should not cause the administrative remedies available under the plan to be deemed exhausted.

48. Mr. Witt requested such an explanation in his July 12 letter.

49. Reed Group did not provide the requested explanation, or any response to Mr. Witt's July 12 letter, within ten days.

50. Twelve days after receiving Mr. Witt's July 12 letter via fax, Reed Group responded by faxed letter dated July 24, 2023.

51. Reed Group's July 24 letter acknowledged that it did, in fact, receive Mr. Witt's appeal, by fax, on May 25, 2023.

52. Reed Group's July 24 letter also stated that it had originally received its requested medical reviews "in early July," but that those reports had to be "corrected based on the plan provisions for medical evidence." This, Reed Group stated, necessitated its extension request.

53. With its July 24 letter, Reed Group provided copies of the two medical file reviews it had obtained. The new reviews were conducted by a family medicine doctor and a psychiatrist, neither of whom claimed any particular expertise with sleep disorders.

54. The psychiatry file reviewer specifically "deferred" comment on part of her review to "a sleep medicine specialist," just as the prior neuropsychological file reviewer had.

55. Neither of these reviewers mentions or discusses the prior IME report from Dr. Hurty which found that Mr. Witt would be unable to perform the essential functions of his own occupation.

56. At no point has Reed Group had this claim reviewed by any medical provider with expertise in sleep disorders, despite suggestions that it should do so by two of its other reviewers.

57. The ERISA claims regulations, at 29 C.F.R. §§ 2560.503-1(l), state that:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act...

58. As of the filing of this complaint, Mr. Witt has elected to consider his administrative remedies under the Plan exhausted by operation of the ERISA regulations. Reed Group was late in deciding his appeal, late in requesting an extension of time to complete their

appeal review, that extension was not for a "special circumstance" beyond the Plan's control, they were late in responding to his "10-day letter" of July 12th, and they have not consulted with "a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment," as required by the ERISA regulations. 29 C.F.R. § 2560.503-1(h)(3)(iii), (h)(4).

59. These failures constitute failure to follow the claims procedures provided by the relevant regulations.

60. Because of these failures, Plaintiff's administrative remedies are deemed exhausted by operation of the claims regulations, specifically 29 C.F.R. § 2560.503-1(l).

61. Plaintiff was and continues to be disabled under the terms of the Plan, and is entitled to LTD benefits.

62. Intel Corporation, the sponsor of the Plan, has earned business or investment profits on the funds owed to Mr. Witt during the time his benefits have been wrongfully withheld.

## FIRST CAUSE OF ACTION
## FOR PLAN BENEFITS PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

63. Under the terms of the Plan, Defendant agreed to provide Plaintiff with long term disability benefits in the event that Plaintiff became disabled as defined by the Plans.

64. Plaintiff is disabled and entitled to benefits under the terms of the Plan.

65. Defendant failed to provide benefits due under the terms of the Plan and the denial of benefits to Plaintiff constitutes a breach of the Plan.

66. The decision to deny these benefits were wrong under the terms of the Plan.

67. The decision to deny benefits and decision-making processes was arbitrary and capricious.

68. The decision to deny benefits were not supported by substantial evidence in the record.

69. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which he would have been entitled under the Plan.

70. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

71. To the extent that the Plan confers discretion on Reed Group to issue decisions on claims under the Plan, Reed Group has failed to exercise that discretion by failing to issue a timely decision on the appeal, and by its other violations of ERISA claims procedure. As such, the Court's review of this claim will be under the *de novo* standard of review. *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan*, 349 F.3d 1098, 1105-06 (9th Cir. 2003).

///

///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff requests that this Court grant him the following relief in this case:

**On Plaintiff's First Cause of Action:**

1. A finding in favor of Plaintiff against the Defendant;

2. Damages in the amount equal to the disability income benefits to which he was entitled through the date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. Disgorgement of any profits Intel Corporation earned on benefits due to Plaintiff as a result of the wrongful withholding or delaying of those benefits as an equitable remedy;

5. Plaintiff's reasonable attorney fees and costs; and

6. Such other relief as this court deems just and proper.


Dated this 26th day of July, 2023.

                                                            Respectfully submitted,

                                        BY:    *s/Jeremy L. Bordelon*_____
                                                        Jeremy L. Bordelon, OSB No. 160789