IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANDY WITT,

                Plaintiff,

      v.

INTEL CORPORATION LONG-TERM
DISABILITY PLAN,

                Defendant.

Case No.: 3:23-cv-01087-AN


OPINION AND ORDER

        Plaintiff Randy Witt brings this action against defendant Intel Corporation Long-Term Disability Plan ("Intel") seeking benefits under the terms a long-term disability plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). On August 25, 2023, defendant filed a Motion to Compel Exhaustion of Administrative Remedies and Stay Proceedings, ECF [8]. Oral argument was held on September 29, 2023. For the following reasons, defendant's motion is DENIED.

## LEGAL STANDARD

        Federal courts "have the authority to enforce the exhaustion requirement in suits under ERISA," even though ERISA itself does not explicitly require exhaustion. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (internal quotation marks omitted). Thus, prior to bringing a suit under ERISA, a plaintiff must "avail himself or herself of a plan's own internal review procedures." *Id.* (internal quotation marks omitted). As relevant to the present motion, 29 C.F.R. § 2560.503-1(l)(2)(i) provides an exception to the exhaustion requirement in the specific context of disability plans, stating:

> "[I]f the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan, except as provided in paragraph (l)(2)(ii) of this section. Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

1

Subsection (l)(2)(ii) limits the applicability of this exception, stating:

> "[T]he administrative remedies available under a plan with respect to claims for disability benefits will not be deemed exhausted based on de minimis violations that do not cause, and are not likely to cause, prejudice or harm to the claimant so long as the plan demonstrates that the violation was for good cause or due to matters beyond the control of the plan and that the violation occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant. This exception is not available if the violation is part of a pattern or practice of violations by the plan. The claimant may request a written explanation of the violation from the plan, and the plan must provide such explanation within 10 days, including a specific description of its bases, if any, for asserting that the violation should not cause the administrative remedies available under the plan to be deemed exhausted."

## BACKGROUND

Plaintiff worked at Intel as a software development engineer. Compl., ECF [1], ¶¶ 6-7. Intel had an employee welfare benefit plan, the Long-Term Disability Plan (the "Plan"), that covered plaintiff and constitutes an ERISA welfare benefit plan. *Id.* ¶¶ 5, 9-10. Plaintiff ceased working for Intel on June 28, 2021 due to symptoms from 'idiopathic hypersomnia,"[1] as well as other conditions. *Id.* ¶ 11.

### A.    Initial Application for Benefits

Plaintiff first applied for short-term disability benefits under the Plan. *Id.* ¶ 14. ReedGroup is the claims administrator for claims made under Intel's Short-Term and Long-Term disability plans. *Id.* ¶ 15. ReedGroup sent plaintiff for an in-person examination with an internal medicine and family practice doctor, Dr. Hurty, as part of the claim consideration process. *Id.* ¶ 17. Dr. Hurty examined plaintiff on April 8, 2022, and determined that plaintiff had limitations preventing him from performing his work at Intel. *Id.* ¶¶ 18-19. Dr. Hurty considered a Multiple Sleep Latencies Test ("MSLT") performed in 2018 to be the "most consistent single element of supporting evidence," and plaintiff obtained only 230 seconds of sleep duration and was unable to achieve REM sleep. *Id.* ¶ 19. ReedGroup approved plaintiff's claim for the maximum one year of short-term disability benefits, back-dating his claim to when he stopped working

---

[1] Idiopathic hypersomnia is a medical condition similar to narcolepsy; however, it does not cause sudden onsets of sleepiness. Compl. ¶ 12. Plaintiff's symptoms primarily include extreme difficulty in sleeping for extended periods at once, with corresponding sleepiness during the day. *Id.*

in June 2021. *Id.* ¶ 16. After those benefits were exhausted, ReedGroup approved approximately three months of long-term disability benefits from June 27, 2022 to September 30, 2022. *Id.* ¶ 21.

On September 20, 2022, ReedGroup denied plaintiff's claim for additional benefits, stating that it did not find him disabled beyond September 30, 2022. *Id.* ¶ 22. It stated two reasons: (1) plaintiff had not been adhering to the treatment plan outlined by his provider; and (2) it had consulted with a neuropsychologist who found that plaintiff's secondary psychiatric or cognitive issues were not functionally impairing. *Id.* ¶ 23. Though the neuropsychologist's report stated that she would "defer to a sleep specialist regarding the presence of functional impairments," ReedGroup did not consult with a sleep specialist before denying plaintiff's claim, nor did its denial discuss or address Dr. Hurty's April 2022 findings. *Id.* ¶¶ 25-27.

**B.       The Plan's Appeal Process for Benefits Denial**

The Plan provides a mandatory two-level appeals process once a claimant receives an adverse benefit determination. Def.'s Mot. to Compel ("Def.'s Mot."), ECF [8], Ex. A, at 16. For the first-level of review, the plan states that the claimant has 180 days to request review and requires that:

> "Any request for review shall be in writing, and shall set forth all of the grounds upon which it is based, and all facts, documents, records, and other information relating to the claim for benefits the Participant . . . deems relevant. The Plan Administrator may require the Participant to submit any additional information, documents, records or other materials necessary to decide the appeal from the adverse benefit determination."

*Id.* Subsequent appeal deadlines are set forth as follows:

> "Following receipt of any request for review, the Plan Administrator shall within a reasonable period of time, but not later than 45 days after receipt of the request for review by the Plan, notify the Participant of the determination on review. The 45-day period may be extended by the Plan for up to 45 days, provided that the Plan Administrator both determines that special circumstances require an extension of time for processing the review and notifies the Participant, prior to the expiration of the initial 45-day period, of the special circumstances requiring the extension and the date by which a determination is expected to be rendered."

*Id.*, Ex. A, at 17. The plan notes that the Plan Administrator must provide the participant with "any new or additional evidence considered, relied upon, or generated by the Plan Administrator . . . in connection with the claim," as well as "any new or additional rationale for the determination." *Id.*

The Plan administrator "will consider the Participant's response to the new or additional evidence and/or rationale." *Id.* The plan then details the procedure for initiating a second-level appeal if the first level determination is adverse. *Id.*

Finally, the plan states that "[n]o legal or equitable action for benefits under the Plan shall be brought unless and until the Participant has exhausted the claims and appeals procedures." *Id.*, Ex. A, at 18.

## C.    Plaintiff's Appeal

Plaintiff, through his attorney, appealed the denial on May 25, 2023 by faxing a letter and most of his supporting evidence. Compl. ¶ 30. Plaintiff also mailed a hard copy of the letter and evidence, including two additional sets of supporting medical records, that ReedGroup received approximately one week later, on May 31, 2023. *Id.* ¶¶ 30-31. On July 12, 2023, ReedGroup faxed plaintiff's counsel a letter stating that it needed an extension of time to decide the appeal because it was awaiting the results of independent physician review. Def.'s Mot., Ex. D, at 1. The extension letter stated that ReedGroup had received plaintiff's appeal on May 31, 2023, making the decision date July 15, 2023. *Id.*

Plaintiff's counsel replied on July 12, 2023, asserting that plaintiff's appeal was effective on May 25, 2023, and the extension notice was too late to be effective. *Id.*, Ex. E, at 1. Further, plaintiff argued that the need for an independent physician review was not a "special circumstance" beyond ReedGroup's control, as required for an extension under 29 C.F.R. § 2560.503-1(f)(3).[2] *Id.*, Ex. E, at 1-2. Plaintiff also requested a written explanation of the procedural violation from the Plan. *Id.*, Ex. E, at 2.

ReedGroup replied on July 24, 2023, acknowledging that the appeal was received on May 25, 2023 and recognizing that it acknowledged the May 25, 2023 appeal date in a letter to plaintiff on June 1, 2023. *Id.*, Ex. F, at 1. Further, ReedGroup stated that the medical reviews were

---

[2] The relevant regulation is 29 C.F.R. § 2560.503-1(i)(1)(i), which governs extensions for appeal determinations—section (f) governs extensions for initial determinations. However, the relevant language is essentially identical.

received in early July but had to be corrected based on the Plan provisions for medical evidence. *Id.* ReedGroup included copies of the two medical reviews it had obtained, which were conducted by a family practice doctor and a psychiatrist, and invited plaintiff to rebut the reviews within seven days. *Id.*

Rather than respond, plaintiff filed the present action on July 26, 2023, seeking the Plan benefits that he was denied and alleging that his administrative remedies under the Plan have been exhausted. Compl. ¶¶ 58-61, 64. ReedGroup issued its first-level appeal decision on August 14, 2023, upholding the denial of benefits. Def.'s Mot., Ex. G. On August 25, 2023, defendant filed a motion to stay the present proceedings and compel plaintiff to exhaust his administrative remedies. *Id.*

## DISCUSSION

Plaintiff alleges that his administrative remedies are deemed exhausted under 29 C.F.R. § 2560.503-1(l)(2)(i) because ReedGroup: (1) failed to issue a decision with forty-five days of receiving his appeal; (2) failed to request an extension of time within the first forty-five days; (3) stated a reason for taking the extension that was not permitted under ERISA regulations; and (4) failed to consult with an appropriate medical specialist.

### A.    Procedural Violations

As stated previously, under 29 C.F.R. § 2560.503-1(l)(2)(i), a claimant is deemed to have exhausted his administrative remedies if a plan fails to strictly adhere to all ERISA procedural requirements. Thus, the threshold question is whether ReedGroup committed a procedural violation.

#### 1.    *Extension Request Deadline*

ReedGroup requested an extension on July 12, 2023. Per 29 C.F.R. § 2560.503-1(i)(1)(i), a plan administrator may request an extension of time for processing a claim, but "written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45]-day period."[3]

---

[3] Because the Plan involves disability benefits, it is governed by 29 C.F.R. § 2560.503-1(i)(3)(i), which shortens the general 60-day deadline for determinations to forty-five days.

Defendant argues that ReedGroup timely requested the extension because plaintiff's appeal was not effectuated until May 31, 2023 when his full supporting documents were submitted. Defendant highlights that the Plan's language indicates that an appeal is not considered submitted until it provides all the grounds upon which the appeal is based. However, this argument is undermined by ReedGroup's written acknowledgement that the appeal was effectuated on May 25, 2023. *See* Def.'s Mot., Ex. F, at 1 ("The appeal received date is May 25, 2023 with the 45-day timeframe expiring July 9, 2023. (We acknowledged the appeal and the May 25th receipt date in a letter to [plaintiff] on June 1, 2023.)").

Further, though defendant relies on *Peck v. Aetna Life Insurance Company* for the proposition that submission of additional materials to support an appeal tolls the appeal decision deadline, that case is neither binding nor applicable to the present facts. 495 F. Supp. 2d 271 (D. Conn. 2007). In *Peck*, the court found that the defendant plan administrator's request for an extension of time was a "special circumstance" because it requested the extension after plaintiff submitted additional materials that the plan had requested. *Id.* at 276-77. Although the appeal deadline may be tolled when an extension is requested "due to a claimant's failure to submit information necessary to decide the claim," or when a plan administrator requests additional information, that is not the case here. 29 C.F.R. § 2560.503-1(i)(4). ReedGroup never requested additional information from plaintiff, nor did ReedGroup indicate that it needed the extension because plaintiff failed to submit necessary information. Plaintiff's appeal was effectuated on May 25, 2023, making the 45-day determination deadline July 10, 2023.[4] In turn, ReedGroup's July 12, 2023 extension request was not timely. Therefore, ReedGroup committed a procedural violation by requesting an extension after the 45-day deadline to issue a determination had passed.

29 C.F.R. § 2560.503-1(i)(1)(i) also dictates that a plan administrator may issue a notice of an extension of time for processing an appeal only if it determines that "special circumstances" warrant an extension. The parties' arguments on this point are a bit muddied as they conflate the "special circumstances" requirement of subsection (i)(1)(i) with the "good cause or due to matters beyond the control

---

[4] The 45-day deadline ended on July 9, 2023. However, because that date was a Sunday, the applicable deadline is the following business day, July 10, 2023.

of the plan" requirement of subsection (l)(2)(ii).  However, as best the Court can determine, plaintiff argues that awaiting results of a medical file review is not a special circumstance, citing *Salisbury v. Prudential Insurance Company of America*, 238 F. Supp. 3d 444, 449-50 (S.D.N.Y. 2017) and *Satter v. Aetna Life Insurance Company*, No. 3:16-cv-1342 (AWT), 2019 WL 2896410, at *6 (D. Conn. Mar. 20, 2019).  Further, plaintiff argues that ReedGroup did not request the medical reports underlying its extension request until June 23, 2023—twenty-nine days after it received plaintiff's appeal.  Plaintiff argues that under *Hancock v. Aetna Life Insurance Company*, 251 F. Supp. 3d 1363 (W.D. Wash. 2017), such a delay cannot justify an extension request.

In *Salisbury*, the plaintiff appealed her adverse benefits determination on October 15, 2015.  238 F. Supp. 3d at 446.  The defendant plan administrator's deadline to issue a decision was November 29, 2015.  *Id.*  The defendant provided written notice to plaintiff on November 24, 2015 that it was seeking an extension of time "to allow for review of the information in [plaintiff's] file which remains under physician and vocational review."  *Id.*  The defendant indicated that a decision would be rendered by January 13, 2016.  *Id.*  The plaintiff filed suit in the Southern District of New York, alleging that the defendant's extension request provided insufficient "special circumstances" to justify an extension of time.  *Id.*

In determining the applicable standard of the review, the court assessed the meaning of "special circumstances."  *Id.* at 449-50.  The court looked to the Department of Labor's preamble, which stated that "the time periods for decisionmaking are generally maximum periods, not automatic entitlements," and that "an extension may be imposed only for reasons beyond the control of the plan."  *Id.* at 449 (internal quotation marks omitted).  Further, the preamble suggested that "simply having too much work does not constitute an acceptable justification" and concluded that a plan administrator's failure to provide a sufficient "special circumstance" would constitute a violation of the claims-procedure regulation. *Id.* (internal quotation marks omitted).  Ultimately, the court concluded that "virtually every appeal of the denial of a disability benefits claim will require 'physician and vocational review,' and thus this cannot constitute a valid 'special circumstance.'"  *Id.* at 450.

Similarly, in *Satter*, the plaintiff sought *de novo* review by the District Court of Connecticut

of his denial of disability benefits because the defendant plan administrator failed to comply with the claims-procedure regulations. 2019 WL 2896410, at *5. Specifically, the plaintiff argued that the defendant sought an extension based on a reason that did not constitute a "special circumstance." *Id.* The defendant had sought an extension of the appeal determination deadline because it was "awaiting the completion of, and report from, an independent medical review." *Id.* The court, like that in *Salisbury*, determined that "[i]n most, if not all, long term disability appeals, the insurer obtains a file review by a medical consultant" and thus, "[t]o find that the defendant's 'justification for seeking an extension in this case constituted a 'special circumstance' would mean that virtually any request for an extension would be permissible, an outcome the Department of Labor has expressly rejected.'" *Id.* at *6 (quoting *Salisbury*, 238 F. Supp. 3d at 450). The court also noted that the defendant had failed to "appoint a reviewing doctor in a timely manner," further supporting its conclusion that the proffered "special circumstance" did not warrant an extension. *Id.*

In *Hancock*, the court in the Western District of Washington reviewed the defendant plan administrator's motion for partial summary judgment where the defendant had requested an extension because it "referred [plaintiff's] file for medical review, which ha[d] not been completed yet." 251 F. Supp. 3d at 1374. However, the court found this reasoning insufficient to establish that there was no genuine dispute of material fact as to whether the defendant had unreasonably delayed the plaintiff's appeal. *Id.* Specifically, the court highlighted that the defendant had waited twenty-eight days into the plaintiff's appeal period to request medical review, and the defendant had not provided any evidence or argument that this waiting period was outside of its control or otherwise reasonable. *Id.*

Defendant first clarifies that, unlike the discussed cases, ReedGoup needed to correct medical reports that were already in its possession, as well as provide the medical reports to plaintiff to give him an opportunity to rebut them. Defendant further argues that these cases are inapplicable because none of them were considering a "deemed exhaustion" argument. Rather, *Salisbury* and *Satter* addressed "special circumstances" in the context of the applicable standard of review, and *Hancock* addressed it in a motion for summary judgment on the plaintiff's common-law claims related to an ERISA plan. Though the Court acknowledges that these cases are not procedurally analogous to the present case, both *Salisbury* and *Satter*

8

addressed the issue of whether a procedural violation was committed by a plan administrator's failure to establish that its proffered reason for an extension was a "special circumstance." Similarly, in *Hancock*, the court necessarily assessed whether the plan administrator's delay in initiating the medical review was a special circumstance because the basis of the plan administrator's argument was that the delay was not unreasonable because the extension was necessary.

Based on the available record, the Court finds that ReedGroup's proffered reasons for needing an extension of the appeal determination deadline is not a "special circumstance." First, though defendant argues that ReedGroup needed additional time to correct the medical reviews, its own actions in failing to initiate the review process for nearly a month are what caused its need for additional time. That is, ReedGroup needed additional time because it waited twenty-nine days to initiate the medical review process, yet defendant provides no explanation for why the 29-day delay was necessary despite such review being required in "virtually every appeal of the denial of a disability benefits claim." *Salisbury*, 238 F. Supp. 3d at 450. Second, providing plaintiff with time to rebut the reviews is an unpersuasive reason when, again, ReedGroup's own actions in failing to initiate the review process are what caused the need for additional time. ReedGroup's delay in requesting the reviews is particularly troublesome given its obligation to provide new or additional rationale to the claimant "as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required." 29 C.F.R. § 2560.503-1(h)(4)(ii). Therefore, ReedGroup committed a procedural violation by requesting an extension for reasons that do not constitute special circumstances.

2.      *Appellate Decision Deadline*

Defendant argues that, even if the appeal was received on May 25, 2023, ReedGroup's final decision was not due until August 23, 2023 (90 days after the appeal was filed).[5] ReedGroup issued its appeal determination letter to plaintiff on August 14, 2023, thus defendant argues that no procedural requirements were violated. However, having already determined that the extension was not warranted

---

[5] Defendant appears to be basing this argument on the premise that the extension request was effective.

based on ReedGroup's proffered reasons, this argument fails. Plaintiff's appeal was submitted on May 25, 2023. The 45-day deadline for ReedGroup to issue its review decision was July 10, 2023. ReedGroup did not issue a determination on that day. Therefore, it committed a procedural violation.

      3.    *Failure to Obtain Medical Review from Appropriate Medical Professionals*

Plaintiff next argues that ReedGroup committed a procedural violation by failing to obtain medical reviews from appropriate medical professionals. When an appeal of an adverse benefit determination is based in whole or in part on a medical judgment, the plan administrator must "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii).

Defendant argues that plaintiff had an opportunity to challenge ReedGroup's choice of medical reviewers but declined to do so. Defendant also argues that the August 14, 2023 appeal determination letter explains that ReedGroup chose to use a family practice physician because "Family Practice . . . matched the specialty of [plaintiff's] primary Attending Physician who was certifying disability regarding the diagnosis of Idiopathic Hypersomnia." Def.'s Mot., Ex. G, at 6. Defendant notes that the psychiatrist reviewer deferred comments on plaintiff's physical conditions and symptoms to "an appropriate specialist," and listed family practice as an example specialty. *Id.*, Ex. G, at 7.

In essence, plaintiff argues that ReedGroup should have consulted a sleep medicine specialist because only a sleep medicine specialist was an "appropriate health care professional." Pl.'s Resp. to Def.'s Mot. to Compel, ECF [9], at 12-13. Though plaintiff acknowledges that Dr. Hurty was not a sleep medicine specialist, he argues that Dr. Hurty had completed an eight-hour continuing medical education course in sleep disorders in 2017 and specifically found that plaintiff's disability was substantiated by the MSLT. *Id.* at 13, Ex. 2, at 9. Plaintiff argues that ReedGroup gave no weight to Dr. Hurty's report when determining his claim, or on appeal. Further, plaintiff argues that had ReedGroup complied with the regulatory time frame and provided the medical reviews to him earlier in the process, then plaintiff would have had the opportunity to highlight that two of ReedGroup's reviewers had suggested the need for a sleep specialist's review.

As highlighted by defendant, a plan administrator's choice of a physician reviewer is not necessarily limited to a specific specialty. *See S.L. ex rel. J.L. v. Cross*, _ F. Supp. 3d _, 2023 WL 3738991, at \*16 (W.D. Wash. May 31, 2023) (finding no abuse of discretion where claimant's mental health and substance abuse claims were evaluated by child and adolescent psychiatrist); *Wessman v. Provident Life & Acc. Ins. Co.*, 606 F. Supp. 2d 1098, 1108 (C.D. Cal. 2009) (finding no abuse of discretion where plan relied on medical review from three orthopedists regarding plaintiff's orthopedic disabilities); *Salomaa v. Honda Long Term Disability Plan*, 542 F. Supp. 2d 1068, 1080 (C.D. Cal. 2008) (noting that 29 C.F.R. § 2560.503-1(h)(3)(iii) "is not so demanding that it requires plan administrators to retain an expert specific to every unique condition or disease that an [*sic*] beneficiary may claim"), *rev'd on other grounds*, 642 F.3d 666 (9th Cir. 2011). However, the chosen medical professional's field must be, at the very least, relevant to the claimant's disabilities. *See Yox v. Providence Health Plan*, 659 Fed. App'x 941, 944 (9th Cir. 2016) (affirming district court determination that plan did not use appropriate health care professionals when relying on internist, family practitioner, and anesthesiologist to evaluate claimant's dental reconstruction claim); *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 156-57 (5th Cir. 2009) (finding plan's appeal determination was not based on review by appropriate medical professionals when professionals were not urologists and claimant's disability claim related to continuous bladder irrigation).

On balance, ReedGroup relied on reviews by medical professionals with appropriate training and experience in the field of medicine related to plaintiff's claim. As defendant notes, ReedGroup chose a family practice physician because plaintiff's attending physician who initially certified his disability was a family practice physician. Though Dr. Hurty had specific training that may have made him more appropriate for assessing plaintiff's disability, requiring this level of specificity when determining the appropriateness of a medical reviewer encourages a hyper-technical application of the regulation. *See Castilleja v. SBC Disability Income Plan*, No. Civ.A.SA04CA0385XR, 2005 WL 1240155, at \*5 n.10 (W.D. Tex. May 19, 2005) (finding that regulation is "not so hyper-technical . . . that it requires a medical diagnosis by a rheumatologist to be reviewed by another rheumatologist"). Further, plaintiff fails to acknowledge that the psychiatrist listed "specialist trained/capable of responding as applicable i.e.: Family

Practice" alongside a sleep specialist as additional recommended reviewers. Def.'s Mot., Ex. G, at 7. Additionally, ReedGroup's reliance on a psychiatrist's review was likely reasonable because the psychiatrist assessed plaintiff's "psychological and cognitive impairments" that were related to the symptoms underlying plaintiff's disability claim. *Id.*

Finally, ReedGroup likely did not commit a procedural violation by failing to consider Dr. Hurty's findings in its appeal determination because plaintiff did not include Dr. Hurty's report in his appeal materials. ReedGroup considered the materials provided by plaintiff's current treating physicians, including his sleep specialist, in its appeal determination, but "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).

**B.    *De Minimis* Exception**

In sum, ReedGroup committed the following procedural violations: (1) requesting an extension of time after the 45-day determination deadline had passed, in violation of 29 C.F.R. § 2560.503-1(i)(1)(i); (2) requesting an extension of time for a reason that does not constitute a "special circumstance" in violation of 29 C.F.R. § 2560.503-1(i)(1)(i); and (3) failing to issue a determination within the 45-day deadline, in violation of 29 C.F.R. § 2560.503-1(i)(3)(i). However, this does not end the inquiry. Under 29 C.F.R. § 2560.503-1(l)(2)(ii), a *de minimis* violation will not deem a claimant's administrative remedies exhausted if: (1) the plan demonstrates that the violation was for good cause or due to matters beyond its control; (2) the violation occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant; (3) the violation did not cause, or was not likely to cause, prejudice or harm to the claimant; and (4) the violation was not part of a pattern or practice of violations by the plan.

1.    *Delay in Extension Request*

Defendant argues that ReedGroup's two-day delay in requesting an extension is a *de minimis* violation because plaintiff does not allege that he was prejudiced or harmed in any way from the delay. The problem with defendant's argument, as pointed out by plaintiff, is that it neglects to address the initial inquiry. That is, defendant's argument provides no explanation or basis substantiating that

ReedGroup had good cause for the two-day delay in requesting an extension, or that the delay was due to matters beyond ReedGroup's control. Defendant provides many arguments for why the extension request itself was supported by good cause, but it provides no similar argument in relation to the delay in making that request. Yet, 29 C.F.R. § 2560.503-1(l)(2)(ii) states that *de minimis* violations that do not prejudice or harm the claimant will not deem administrative remedies exhausted *so long as* the plan demonstrates that the violation was for good cause or due to matters beyond the control of the plan. Read as a whole, this sentence indicates that, even if a violation does not prejudice or harm a claimant, the *de minimis* exception does not apply unless the plan demonstrates that the violation was for good cause or due to matters beyond its control.

To some extent, the Court agrees that a two-day delay would be a *de minimis* violation. However, defendant's failure to provide any explanation of good cause for the delay, or any basis for finding that the delay was due to matters beyond ReedGroup's control, renders the *de minimis* exception inapplicable for this violation. *See Barboza v. Cal. Ass'n of Pro. Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011) (citing *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 223 (2d Cir. 2006) with approval for proposition that "substantial compliance" with ERISA requirements is insufficient to avoid deemed exhausted finding); *Hasten v. Prudential Ins. Co. of Am.*, 470 F. Supp. 3d 1076, 1082 (N.D. Cal. 2020) (holding that 29 C.F.R. § 2560.503-1(l)(2)(ii) did not apply where defendant did not demonstrate that delays were for good cause or due to matters beyond control of the plan, despite lack of prejudice to plaintiff and ongoing exchange of information between parties).

2.    *Rationale for Extension Request*

As for the extension request itself, defendant argues that ReedGroup had good cause for requesting the extension because it needed to correct the medical reports, and provide those medical reports to plaintiff to afford him an opportunity to rebut them. That is, defendant argues that providing plaintiff with a good faith exchange of information constitutes good cause for the extension.

Although the Court has already found that ReedGroup's extension request was not based on a "special circumstance," that inquiry differs from whether the request was made for good cause.

However, the prior analysis regarding whether ReedGroup's reasoning constitutes a special circumstance is equally applicable to the "due to matters beyond its control" prong because, as already stated, ReedGroup needed the extension due to matters well within its control. Thus, the only question is whether ReedGroup sought the request for good cause.

Subsection (l)(2) was added to 29 C.F.R. § 2560.503-1 in 2016, but did not become effective until April of 2018. As such, few cases have addressed the meaning of "good cause" in this context. However, the Department of Labor described this new subsection as "stricter than a mere 'substantial compliance' requirement." Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92316, 92327 (Dec. 19, 2016) (codified at 29 C.F.R. § 2560.503-1(l)(2)(i)-(ii)).

Plaintiff relies primarily on *Hasten v. Prudential Insurance Company of America*, 470 F. Supp. 3d 1076, however that case is not particularly helpful. In *Hasten*, the plaintiff applied for long-term disability benefits on July 25, 2019, making the initial determination deadline September 8, 2019. *Id.* at 1078. Based on ERISA regulations, the court determined that, if extension periods were properly invoked, the latest deadline to provide a determination would be November 7, 2019. *Id.* On August 19, 2019, the defendant plan administrator sent notice that it would be taking a 30-day extension, but it stated no reason for the extension nor did it provide an anticipated decision date.[6] *Id.* The parties maintained communication, and the defendant requested additional information from the plaintiff (that the plaintiff contended she had already submitted, but resubmitted regardless) and sought information from the plaintiff's treating doctor. *Id.* at 1078-79. On November 13, 2019, the defendant again advised the plaintiff that it would be taking an additional 30-day extension period, but did not provide any reason for needing the extension or an anticipated decision date. *Id.* at 1079. On November 27, 2019, the defendant denied the plaintiff's claim. *Id.* The plaintiff did not appeal the decision, choosing instead to file suit in the Northern District of California. *Id.*

The defendant moved to dismiss the claim for failure to exhaust available remedies, and

---

[6] This extension would have moved the determination deadline to September 18, 2019.

the plaintiff asserted that her administrative remedies were deemed exhausted under 29 C.F.R. § 2560.503-1(l)(2)(i). *Id.* In denying the defendant's motion, the court found that the defendant had failed to strictly adhere to the procedural requirements of ERISA, as required by subsection (l)(2)(i). *Id.* at 1081. The court noted that the defendant never indicated whether its extension requests were due to circumstances beyond its control, nor did it provide an anticipated decision date or any specific reason for the extension. *Id.* at 1081-82. Although the first request was sent within the initial 45-day time period, the court noted that the second request was sent fifty-six days after the first extension period had expired. *Id.* at 1081. Ultimately, the court found that the defendant had failed to decide the plaintiff's claim within the time frames dictated by the regulations, and it had failed to follow procedures for properly requesting deadline extensions. *Id.* at 1081-82. Further, the court determined that the violations were not *de minimis* because the defendant had not provided evidence that its delays were for good cause or due to matters beyond its control. *Id.*

The issues in *Hasten* were, in many ways, more egregious than the facts presently before the Court. That is, the plan administrator in *Hasten* failed to provide any reason whatsoever for its requested extensions, failed to provide an anticipated decision date, requested an extension fifty-six days after its deadline to do so, and still ultimately issued a determination twenty days after the latest possible deadline. Conversely, in the present case, ReedGroup provided reasons for its requested extension, gave an anticipated decision date, requested a determination two days after the deadline, and ultimately issued its determination within ninety days of plaintiff's appeal.

The Court finds *Brewer v. Unum Group Corporation* more helpful given the similarity in its facts to the present case. 622 F. Supp. 3d 1113 (N.D. Ala. 2022). In *Brewer*, the plaintiff was initially granted short-term disability benefits, but was later denied long-term disability benefits. *Id.* at 1120. The plaintiff effectively appealed the denial on March 18, 2021, making the defendant plan administrator's 45-day determination deadline May 2, 2021. *Id.* On April 28, 2021, the defendant called the plaintiff's attorney to request an extension, and the attorney responded in writing, agreeing to a 14-day extension but requiring more information for the basis of the extension before agreeing to any lengthier extension. *Id.* at 1120-21. Thus, the determination deadline became May 12, 2021. *Id.* at 1121. On April 30, 2021, the defendant

sent the plaintiff a letter and enclosure of new information, which consisted of new medical reports.  *Id.*  The letter included a formal notice of extension, stating that the basis for the extension was affording the plaintiff an opportunity to review and respond to the medical reports.  *Id.*  Though the defendant asserted that the new determination deadline was June 21, 2021, the plaintiff expressly disagreed, maintaining that the deadline was May 12, 2021.  *Id.*  After May 12, 2021 passed with no decision, the plaintiff filed suit in the Northern District Court of Alabama on May 18, 2021.  *Id.*  The defendant issued its determination on May 21, 2021, upholding the denial.  *Id.*

The plaintiff moved for partial summary judgment and the court assessed the relevant standard of review.  *Id.* at 1122-23.  The court held that the formal extension request was not made for a "special circumstance" because neither allowing the plaintiff time to review and respond to new information nor the defendant's need to review the plaintiff's response to the new information were "special."  *Id.* at 1125-26.  Thus, the court held that the extension request was ineffective, and the decision deadline remained May 12, 2021, making the May 21, 2021 decision untimely and violative of ERISA's requirements.  *Id.* at 1127.  Further, the court found that, if the untimely decision was not a *de minimis* violation under 29 C.F.R. 2560.503-1(l)(2)(ii), then the defendant had denied the plaintiff's claim without the exercise of discretion, requiring *de novo* review.  *Id.* at 1129-30.

The court held that "[a] plan administrator's failure to issue a *timely* decision [ ] goes to the heart of the claims process."  *Id.* at 1130.  In the court's view, interpreting untimeliness as *de minimis* "would encourage plan administrators to (1) blow the deadline, (2) wait for the claimant to file suit, (3) issue an untimely decision, and then (4) argue that its untimeliness was de minimis and that, as a result, the claimant had not exhausted her administrative resources when she filed suit."  *Id.* at 1131.  Put another way, "[f]orgiving late decisions would [ ] encourage plan administrators to 'sandbag' the claimant by 'issuing a decision tailored to combat her complaint.'"  *Id.* (quoting *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1005 (7th Cir. 2019)).  As for the good cause prong, the court essentially compared it to the "special circumstances" prong, noting that the defendant should have known that sending the plaintiff a medical review and needing her response was not "unusual."  *Id.*  Further, the court highlighted that the

defendant solely controlled the timing of sending new information to the plaintiff, so it could not have missed the deadline for reasons beyond its control. *Id.* Thus, the court held that the *de minimis* exception in 29 C.F.R. § 2560.503-1(l)(2)(ii) did not apply because the violation was not *de minimis* and the defendant had not shown that the violation occurred for good cause or due to matters outside of its control. *Id.*

Though *Brewer* was decided in a different procedural posture than the present case, the Court finds its rationale for assessing good cause persuasive. Like the defendant in *Brewer*, ReedGroup knew that plaintiff would need time to review the medical reports. Though it may not have known that the reports would need to be corrected, it likely knew that such reports are commonly compiled in disability appeal cases, yet still chose to wait to request the reports until June 23, 2023. As such, ReedGroup's extension request was not made for good cause and does not fall under the *de minimis* exception.

        3.    *Untimeliness of Decision*

Finally, because ReedGroup's extension request was not made for a "special circumstance," it was ineffective at moving the decision deadline. ReedGroup's decision deadline was July 10, 2023 and its August 14, 2021 decision was untimely. ReedGroup offers no basis for finding that the untimeliness was for good cause or due to matters beyond its control, nor does this Court find such a violation to be *de minimis*. Therefore, ReedGroup's untimely decision does not fall under the *de minimis* exception.

Because ReedGroup committed procedural violations while processing plaintiff's appeal that do not constitute *de minimis* violations under 29 C.F.R. § 2560.503-1(l)(2)(ii), plaintiff's administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(l)(2)(i).

## CONCLUSION

Accordingly, defendant's Motion to Compel Exhaustion of Administrative Remedies and Stay Proceedings, ECF [8], is DENIED.  Defendant is ordered to file a response to plaintiff's Motion for Judgment on the Pleadings, ECF [10], within fourteen (14) days of this order.  Plaintiff's reply, if any, is due with fourteen (14) days of defendant's response.

IT IS SO ORDERED.

DATED this 16th day of February, 2024.

Adrienne Nelson
United States District Judge