Jeremy L. Bordelon, OSB No. 160789
jeremy@evergreendisability.com
Evergreen Disability Law
465 Northeast 181st Ave., No. 500
Portland, Oregon 97230
(503) 888-9331
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

RANDY WITT,                                    Civil No. 3:23-cv-01087-AN
       Plaintiff,

                                  PLAINTIFF's MOTION FOR
       v.                                 JUDGMENT ON THE RECORD
                                  (FRCP 52)

the INTEL CORPORATION LONG-TERM
DISABILITY PLAN,

       Defendant.

### Motion for Judgment on the Record

Pursuant to Federal Rule of Civil Procedure 52(a) and 29 U.S.C. Section 1132(a)(1)(B), Plaintiff Randy Witt hereby moves for judgment with issuance of findings of fact and conclusions of law based upon the claim record filed by Defendant Intel Corporation Long-Term Disability Plan and his accompanying Memorandum of Law. Pursuant to Local Rule 7-1, Plaintiff states the parties have made a good faith effort to resolve this dispute and have been unable to do so.

///

///

///

///

**TABLE OF CONTENTS**

MOTION                                                                    1

LR 7-1 CERTIFICATION                                                      1

TABLE OF CONTENTS                                                         2

TABLE OF AUTHORITIES                                                      3

MEMORANDUM OF LAW                                                         5

   I.  Statement of facts                                   5

   II.  The *de novo* standard of review applies to this case   11

   III.  Argument                                            15

     A.  The original denial of Plaintiff's claim was unsupported   15

     B.  Plaintiff's appeal evidence supports disability   17

     C.  The Plan's appeal evidence fails to rebut disability   20

     D.  Social Security exam reports support disability, should be considered   21

     E.  Remedy should be an immediate award of all benefits due   23

## TABLE OF AUTHORITIES

**Cases**

*Brewer v. Unum Group Corporation*, 622 F. Supp. 3d 1113 (N.D. Ala. 2022)    13

*Bunger v. Unum Life Ins. Co. of Am.*, 299 F. Supp. 3d 1145 (W.D. Wash. 2018)    21

*Capianco v. Long-Term Disability Plan of Sponsor Uromed Corp.*,    14
247 F. App'x 885 (9th Cir. 2007)

*Collier v. Lincoln Life Assur. Co. of Boston*, 53 F.4th 1180 (9th Cir. 2022)    14, 17

*Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822 (7th Cir.2004)    24

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)    11, 12

*Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan*,    21
329 F. Supp. 2d 1198 (C.D. Cal. 2004)

*Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003)    13

*Gritzer v. CBS, Inc.*, 275 F.3d 291 (3d Cir. 2002)    13

*Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir. 2001)    24

*Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protec. Plan*,    11, 12,
349 F.3d 1098 (9th Cir. 2003)    14, 17

*Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999)    21, 22

*Langlois v. Metro. Life Ins. Co.*, 833 F. Supp. 2d 1182 (N.D. Cal. 2011)    11

*Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*,    21, 22
46 F.3d 938 (9th Cir. 1995)

*Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98 (2d Cir. 2005)    13

*Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*,    22
12 F. Supp. 3d 1237 (N.D. Cal. 2014)

*Opeta v. Northwest Airlines Pension Plan*, 484 F.3d 1211 (9th Cir. 2007)    21, 22

*O'Neal v. Life Ins. Co. of N. Am.*, 10 F. Supp. 3d 1132 (D. Mont. 2014)    22

*Petrusich v. Unum Life Insurance Company of America*,                    24
984 F. Supp. 2d 1112 (D. Or. 2013)

*Salomaa v. Honda Long Term Dis. Plan*, 642 F.3d 666 (9th Cir. 2011)    20

*Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program*,                   22-23
718 F. Supp. 2d 1151 (N.D. Cal. 2010)

*Thomas v. Oregon Fruit Products Co.*, 228 F.3d 991 (9th Cir. 2000)      22

*Veronica L. v. Metro. Life Ins. Co.*, 647 F. Supp. 3d 1028 (D. Or. 2022)    14, 21

**Regulations**

29 C.F.R. Sec. 2560.503-1(l)(2)(i)                                        13

## MEMORANDUM OF LAW

### I.  Statement of facts.

Until June 28, 2021, Randy Witt worked for Intel as a Software Development Engineer. Struggling to complete his work duties, Mr. Witt left work on June 28, 2021 because of a rare sleep disorder, idiopathic hypersomnia. His principal symptoms are extreme difficulty in sleeping for extended periods at once, such as at night, which causes him to be exceedingly sleepy during the day. This often leads to an inability to focus, a need for naps during the day, and irritability.

As an employee of Intel, Mr. Witt was covered under the Intel Corporation's short-term disability (STD) and long-term disability (LTD) plans. For STD, and for the first two years of LTD, the definition of disability is effectively the same, one must be disabled from one's own occupation. The full definition as stated in the LTD plan document is as follows:

> Disability/Disabled means the Participant is under the Regular Care of a Physician, and has a greater than 20% loss in Covered Earnings, and … is unable to perform the duties the Participant is normally required to perform in the Participant's Regular Occupation due to an Illness or Injury.

AR 004.[1]

ReedGroup administers claims under both of these plans. As part of its consideration of Plaintiff's LTD claim, ReedGroup asked his employer to complete a form listing the mental and physical requirements of his Regular Occupation as a Software Development Engineer. Mr. Witt's supervisor at Intel completed that form. AR 1263-68.

---

[1] The claim record filed by the Defendant is paginated "Witt_AR_0XXXX." Plaintiff will abbreviate this pagination format herein as shown above for readability.

According to this form, Mr. Witt's "regular occupation" included the following "essential functions":

- Concentrate on work tasks 40 hrs/week

- Perform complex mathematical calculations

- Follow and comprehend verbal and written instructions

- Make independent decisions/judgments

- Synthesize complex information

- Collaborate with others

- Timely complete sensitive projects

AR 1267.

On his STD claim, ReedGroup determined that Mr. Witt was unable to perform his regular occupation for the first year after he left work, until June 26, 2022. AR 1880. It did so, in part, based on an independent exam it sent Mr. Witt to with Dr. Wayne Hurty on April 8, 2022. AR 1127-31. Dr. Hurty reviewed the medical records provided to him and examined Mr. Witt in person. He concluded that there was evidence supporting Mr. Witt's restrictions and limitations:

> It is my opinion that the functional limitations do need to be applied, and the most consistent single element of supporting evidence for this is the MSLT performed in 2018 and the only 230 seconds in sleep duration and also inability to achieve REM sleep. This is going to lead [to] an individual in extreme hypersomnolence, and it is consistent with what he describes clinically. He has periods of time where he is cognitively alert. He says that generally these times are only approximately 30 minutes or 45 minutes in duration where he can function at a very high level and then proceeded by extreme fatigue and actual need for napping. His significant other also corroborates this. This is also consistent with what is reported historically in the file that I reviewed from his sleep specialist physician....

> It it my opinion that he would not be able to have long sustained levels of
> activity requiring high cognitive performance.

AR 1130. Based on this IME report and the other evidence it had previously received,

ReedGroup approved all twelve months of short term disability benefits (AR 1880), and

approved the first three months of long term disability benefits (LTD denial, AR 107,

showing approval of LTD benefits from 6/27/22 - 9/30/22).

In connection with the opening of the LTD claim, however, ReedGroup also

obtained a file review from neuropsychologist Annette Swain, Ph.D. AR 1249-57. Dr. Swain

did not meet with or examine Mr. Witt. She did speak to one of his treating providers, Dr.

Adam Frederick, who told her that Plaintiff's "mood is much, much better but his

idiopathic insomnia [sic] is unchanged." AR 1255. Dr. Swain's impression after speaking

with Dr. Frederick was that "the claimant's sleep issues are fundamental and any

psychiatric or cognitive issues are secondary to that sleep condition." *Id.* She thus

concluded her report to ReedGroup by saying this:

> I can only answer this question from a psychology/neuropsychology
> perspective. It is out of my area of specialty to comment on the claimant's
> insomnia problems. There is insufficient evidence to support the presence of
> psychological or cognitive impairments during the time period in question
> that interfere with the claimant's function. However, it must be emphasized
> that these conditions are not his fundamental problem and are secondary to
> his idiopathic insomnia. **I must defer to a sleep specialist regarding the
> presence of functional impairments due to what appears to be his
> fundamental issue.** Again, psychological and cognitive problems are
> secondary to the sleep problem.... I cannot address impairment due to his
> idiopathic sleep disorder. This would be deferred to a sleep specialist, and
> determination of functional impairment should include this disorder.

AR 1256 (emphasis added).

Despite Dr. Swain's apparent recommendation that ReedGroup consult with a sleep specialist, it did not do so. Instead ReedGroup simply denied Mr. Witt's LTD claim based on Dr. Swain's report, even though she had told ReedGroup she was not the appropriate provider to comment on Mr. Witt's actual disability. ReedGroup's denial letter stated that:

> Dr. Annette Swain, PhD., ABPP, (Neuropsychology), stated that there is insufficient evidence that the claimant's secondary psychiatric or cognitive issues are functionally impairing. Thus, impairment is not noted from a psychology/neuropsychology perspective. Therefore, your claim is denied because the medical documentation received did not indicate that you meet the Plan's definition of Disability from 10/01/2022 through 06/26/2024.

LTD denial notice, AR 108.[2]

Plaintiff appealed this LTD claim denial on May 25, 2023, submitting ten supporting exhibits. AR 386-783. He submitted supportive opinions from his sleep specialist, his primary care provider, and his psychologist; statements from himself and his long-time partner describing his symptoms; and five sets of supporting medical records. The appeal letter itself explained how these exhibits, as well as Dr. Hurty's prior IME report, supported disability. AR 387-89.

In reviewing the appeal, ReedGroup obtained file reviews from a family medicine practitioner and a psychiatrist. AR 874-900. These consultants were given Dr. Swain's prior report to review, but were not provided with Dr. Hurty's IME report. AR 882, 894 (both reviewers referring to Dr. Swain's report, with no references to Dr. Hurty's report

---

[2] The denial notice did also state that Mr. Witt had "not been adhering to treatment plan as outlined by your provider," and claimed this was based on records received from Dr. Frederick. However, nothing in Dr. Frederick's records indicates Mr. Witt was ever non-compliant with any treatment recommendations. Dr. Frederick specifically rejected this contention in his later opinion form, submitted with Plaintiff's appeal. AR 776.

found in either report). The family medicine reviewer, Dr. Sanghvi, did not dispute the diagnosis of idiopathic hypersomnia, but stated that there was no evidence of functional impairment sufficient to support disability. AR 883. The psychiatric reviewer, Dr. El-Atoum, wrote a report similar to that of Dr. Swain's. She wrote that the "claimant's idiopathic hypersonic [sic] was the claimant's main source of reported disability; therefore comment would be referred to a sleep specialist reviewer." AR 889.

Because ReedGroup was already late in making its appeal decision by the time Mr. Witt received these file reviews, he elected to consider his administrative remedies "deemed exhausted" and proceeded directly to court, rather than responding to the file reviews and awaiting ReedGroup's delayed decision. There are, however, two other exam reports from Mr. Witt's Social Security claim which have recently become available, which are relevant to this case.

ReedGroup and the LTD Plan effectively require claimants to apply for Social Security Disability Insurance (SSDI) benefits in order to receive their entire LTD benefit amount. AR 9 (LTD Plan stating that the plan will assume receipt of such benefits, and offset the assumed amount from any LTD payments, unless claimants provide proof they have applied for SSDI); AR 43 (SSDI offset and reimbursement form). Mr. Witt did apply for SSDI, as required, and as of this writing, he is still awaiting a hearing with a Social Security judge on that claim. Earlier in the SSDI process, however, Social Security sent Mr. Witt to two separate mental health exams, one on January 4, 2023, and another on December 16, 2023. Mr. Witt did not receive copies of these reports until recently, when his Social Security attorney downloaded a copy of the that claim file.

Each of these two providers reviewed the available records and conducted a clinical interview with Mr. Witt. The first examiner, in January 2023, was clinical psychologist Kris Steen Hallenburg. *See* Sealed Exhibit A, file with Plaintiff's Motion to Seal. Dr. Hallenburg agreed with the diagnosis of a hypersomnolence disorder under the DSM-5 criteria. *Id.* at 7. She stated there was no indication that Mr. Witt was malingering or exaggerating his reported symptoms. *Id.* She ultimately found that while Mr. Witt was capable of carrying out simple tasks, he was not capable of more complex tasks, could not sustain concentration or persist in work activities at a reasonable pace, and could not interact with coworkers, supervisors or the public. *Id.* at 7-8.

The second examiner, in December 2023 (after this case was filed), was Robert Martinez, M.D., psychiatrist. Sealed Exhibit B. Dr. Martinez made very similar findings to those of Dr. Hallenburg, agreeing again with the diagnosis of a hypersomnolence disorder, and finding that Mr. Witt could perform simple tasks. "However, his ability to sustain attention to daily work activity and tolerate stress/pressures of daily work activity would result in extreme impairment in being able to maintain gainful employment, especially given his rapid onset of fatigue after doing only short bouts of labor." *Id.* at 7.

These exams, conducted respectively at the initial and reconsideration steps of Mr. Witt's SSDI claim, did not result in the immediate approval of that claim, because Social Security requires one to prove they are incapable of essentially *any* occupation, not just complex work such as that required by Mr. Witt's former occupation.

///

///

**II.  The *de novo* standard of review applies to this case.**

The baseline standard of review for judging an ERISA benefits claim is *de novo*.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 105-6 (1989). However, if the terms of

the Plan grant discretion to the administrator making the claims decision, that decision is

reviewed for an abuse of discretion, also referred to as the "arbitrary and capricious"

standard. *Id.* at 115. But if an administrator, granted discretion, fails to exercise that

discretion, such as by failing to make a timely appeal decision, the standard of review

reverts back to *de novo*, because there is no decision to review for an abuse of discretion.

*Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protec. Plan*, 349 F.3d 1098,

1106 (9th Cir. 2003)("Where a trustee fails to act or to exercise his or her discretion, de

novo review is appropriate because the trustee has forfeited the privilege to apply his or

her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere

arbitrary denial, to which a court should defer.") *See also* *Langlois v. Metro. Life Ins. Co.*, 833

F. Supp. 2d 1182, 1188 (N.D. Cal. 2011) (applying *de novo* standard of review because

administrator failed to issue a timely decision under ERISA claims regulations).

Here, the Court should apply the *de novo* standard of review. The plan documents

filed by the Defendant do contain a grant of discretion, but that grant of discretion is to

the Plan Administrator of the Plan, the Intel Corporation Benefits Administrative

Committee. Plan Document, found at AR 014. That Committee had no direct involvement in

the decision made on this claim. Instead, the decision was made by a third party

administrator, ReedGroup. The plan documents do say that the Plan Administrator's

discretion may be delegated, but only if "such delegation is in writing and describes the

nature and scope of the delegated responsibilities and discretion." *Id.* Such a delegation to ReedGroup does not appear in the Plan Document itself, nor in any of the other documents filed by the Defendant thus far.

Certain letters authored by ReedGroup itself do state that "your employer has delegated claim administration of the Plan to ReedGroup." *See, e.g.,* AR 110. These statements are of no consequence, as they do not satisfy the criteria stated in the plan for a delegation of discretion to a third party. The plan states that such delegation must be by the Plan Administrator, and must be "in writing and describe[] the nature and scope of the delegated responsibilities and discretion." AR 014. These statements in ReedGroup's letters are not by the Plan Administrator, they are by ReedGroup itself. The statements do not describe the nature and scope of ReedGroup's responsibilities, to say nothing of discretion. In fact, the statement itself does not even mention discretion, it only states that ReedGroup was delegated the responsibility for "claim administration." This alone would still require *de novo* review. So there exists in this record no proof that ReedGroup has been properly delegated *discretion* to decide claims, which is a different thing than the basic responsibility to decide claims. Without such a delegation of discretion in the record, the Court's review of this claim must be *de novo*, per *Firestone*, *supra*.

Even if Defendant comes forward with a document properly delegating discretion to ReedGroup, the standard of review here would still be *de novo* based on ReedGroup's failure to actually exercise that discretion in a timely and reasonable manner. *Jebian* at 1103 ("We conclude that where, according to plan and regulatory language, a claim is

"deemed ... denied[3]" on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is usually to be reviewed *de novo*.") *See also* Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98 (2d Cir. 2005); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003); *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002); each of which held that if an administrator fails to exercise its discretion by issuing a timely decision, the standard of review in court will be *de novo*. This rationale, widely adopted by the courts, has since been incorporated into the ERISA claims regulations themselves. 29 C.F.R. Sec. 2560.503-1(l)(2)(i): "In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to the claim... the claim or appeal is deemed denied on review **without the exercise of discretion by an appropriate fiduciary.**" (emph. added).

This Court has already ruled that Plaintiff was entitled to deemed exhaustion of his administrative remedies by operation of the ERISA claims regulations, based on ReedGroup's late decisionmaking, which was a violation of the claims regulations. Order denying Defendant's Motion to Compel Exhaustion, D.E. 18, at 18. The Court did not expressly rule on the standard of review in its prior order, but it did find similarities between the instant case and *Brewer v. Unum Group Corporation*, 622 F. Supp. 3d 1113 (N.D. Ala. 2022). The *Brewer* court also found deemed exhaustion applicable after an ERISA administrator missed its decision deadline, and found this required *de novo* review

---

[3] Under an earlier version of the ERISA claims regulations, a late decision resulted in a "deemed denial" of the instant appeal, rather than a "deemed exhaustion" of all administrative remedies.

of the evidence under prior precedents and under the claims regulation section quoted

above. *Id.* at 1132. The same rationale should be adopted here.

Finally, this decision timeline is contained not only in the ERISA claims regulations,

but also in the Plan itself. AR 017. If an administrator violates a provision of the Plan itself,

this is a further factor in support of *de novo* review. *Capianco v. Long-Term Disability Plan of

Sponsor Uromed Corp.*, 247 F. App'x 885, 886-7 (9th Cir. 2007) (citing *Jebian*). As such, even

if the Plan did properly delegate discretion to ReedGroup, ReedGroup failed to exercise

that discretion in the manner required by the regulations and by the very terms of the

Plan itself, so the Court's standard of review for this claim again must be *de novo*.

This Court recently explained how the *de novo* standard of review should be

applied to ERISA claims:

> On *de novo* review, the court does not give deference to the plan
> administrator's decision but "simply proceeds to evaluate whether the plan
> administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health
> & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). In other words, the court
> "determines in the first instance if the claimant has adequately established
> that he or she is disabled under the plan." *Muniz v. AMEC Constr. Mgmt., Inc.*,
> 623 F.3d 1290, 1295–96 (9th Cir. 2010). In doing so, the court makes factual
> findings, evaluates credibility, and weighs evidence. *Rabbat v. Standard Ins.
> Co.*, 894 F. Supp. 2d 1311, 1314 (D. Or. 2012); *see Kearney*, 175 F.3d at 1095
> ("[T]he judge can evaluate the persuasiveness of conflicting testimony and
> decide which is more likely true.").

*Veronica L. v. Metro. Life Ins. Co.*, 647 F. Supp. 3d 1028, 1037 (D. Or. 2022). The Ninth Circuit

has also recently explained that the Court still is tasked with determining whether *the

administrator's* decision is supported by the record, not making a new determination of

whether the claimant is disabled. *Collier v. Lincoln Life Assur. Co. of Boston*, 53 F.4th 1180,

1182 (9th Cir. 2022) (admonishing district courts not to seek out new reasons for

rejection of a claim, not espoused in the administrator's denial notices). Combining the guidance of these decisions, the Court should review the evidence in the record and determine whether Plaintiff has met his burden of proving disability, and should also consider whether the Defendant's timely-stated reasons for denying the claim originally were supported by the record.

## III. Argument

### A. The original denial of Plaintiff's claim was unsupported.

ReedGroup never had a proper evidentiary basis on which to deny this claim in the first place, and as such benefits should be immediately reinstated. In connection with the prior STD claim, ReedGroup had already obtained an independent medical examination, and IME provider Dr. Hurty determined that Mr. Witt was unable to perform his regular occupation because "he would not be able to have long sustained levels of activity requiring high cognitive performance." AR 1130. Mr. Witt's regular occupation as a Software Development Engineer for Intel required, *inter alia*, concentrating on work tasks for forty hours per week, performing complex math, and synthesizing complex information. AR 1267. Clearly, if he was unable to sustain "high cognitive performance," he would be unable to perform this occupation.

Upon transferring Mr. Witt's disability claim from short term disability to long term disability, ReedGroup obtained the report of neuropsychologist Dr. Swain. But Dr. Swain's report did nothing to contradict Dr. Hurty's prior opinion. Dr. Swain said Mr. Witt did not have limitations from a psychological condition, but this was never his contention. Upon discussing the matter with treating primary care provider Dr. Frederick, Dr. Swain realized

that "the claimant's sleep issues are fundamental" to his disability claim, "and any psychiatric or cognitive issues are secondary to that sleep condition." AR 1255. Dr. Swain very clearly stated that ReedGroup should obtain an opinion from a sleep medicine specialist to assess Mr. Witt's limitations from that condition. "I cannot address impairment due to his idiopathic sleep disorder. This would be **deferred to a sleep specialist**, and determination of functional impairment should include this disorder." AR 1256 (emphasis added).

But ReedGroup did not obtain a review from a sleep specialist before denying the claim, even though it was under no time pressure to issue a denial decision. Because Plaintiff's claim was then in an approved status, ReedGroup could have taken as much time as it liked to investigate the claim properly before issuing a denial, it just would have had to approve Plaintiff's monthly benefits along the way. In fact, ReedGroup waited more than two months after the date of Dr. Swain's report to deny the claim, but did not use that time to obtain a sleep medicine report. *Compare* AR 1257 (Dr. Swain's report dated 7/11/22) *with* AR 107 (LTD denial dated 9/20/22).

Instead of investigating the claim properly, ReedGroup issued an unsupported denial, based largely on Dr. Swain's opinion, which by its own terms has nothing to do with Plaintiff's disabling condition. The denial was also based on an obscure, unsupported reference to Plaintiff not "adhering to treatment plan." AR 108. As best as Plaintiff can determine, there is no reference anywhere in his treatment records to him not following treatment recommendations. In fact, Dr. Frederick explicitly stated that Plaintiff *had*

followed all treatment recommendations in his later opinion form, submitted with Plaintiff's appeal. AR 776.

ReedGroup's September 21, 2022 denial letter was the only decision it issued in a timely manner, the only decision issued before Plaintiff filed his complaint, and is thus the only decision from which the Court may draw rationales to support the denial. *See Jebian* and *Collier*, *supra*. But this decision's reasoning is entirely unsupported by the medical evidence, even limiting consideration to that evidence ReedGroup possessed at the time. Dr. Hurty's IME report clearly supported disability, as did the underlying medical records he had reviewed, and Dr. Swain specifically disclaimed any opinion on the relevant disabling condition of idiopathic hypersomnia. As such, the original denial should never have been issued. It should now be overturned, and Plaintiff's claim reinstated with immediate payment of all benefits currently due.

**B. Plaintiff's appeal evidence supports disability.**

The evidence Plaintiff submitted with his appeal only serves to further prove his entitlement to "regular occupation" disability benefits under the Plan.

In the medical records submitted with Plaintiff's appeal, primary care provider Dr. Frederick notes that Mr. Witt appears sleepy in office visits, and exhibits slowed speech. AR 409, 456, 530. These records also detail the difficulties Mr. Witt has had adapting to different medication regimens, and the significant side effects of these medications. AR 543. Prescribed stimulants allow Mr. Witt to stay awake more during the day, but they also affect his sleep at night, resulting in a "crash" scenario after just a few days of this. AR 438. These same symptom patterns are reflected in the other sets of records from Mr. Witt's

sleep specialist and from his psychologist. *See, e.g.,* AR 594 (reporting to sleep specialist that after 3-4 days of prescribed stimulant medications "he gets anxious and he feels the efficacy diminishes"), AR 612 (sleep specialist note stating "He's not done well [with medications]. His treatment has been hampered by a host of idiosyncratic side effects."), AR 621 (reporting to psychologist struggling with the fact that "his mood and anxiety [are] so clearly dependent on 'outside forces' (sleep medication).")

The opinions provided by Mr. Witt's treating providers are more pointed about his functional limitations. Primary care provider Dr. Frederick wrote that Mr. Witt "has poor processing... and loses track of the days." AR 775-76. "His extreme fatigue/sleepiness requires frequent sleep even in the work day. When he is feeling this sleepiness he can't focus or concentrate well enough to complete complicated tasks needed at work." *Id.* Dr. Frederick estimated Mr. Witt would be "off task" (distracted or unable to focus) in the workplace 85% of the time. *Id.*

Dave Fischer, Psy.D., Mr. Witt's treating psychologist, answered questions focused on the claimant's thinking and concentration. AR 773-74. Specifically, he stated that Mr. Witt could not perform any of the mental tasks associated with his regular occupation on a "reliabl[e] or sustained" basis, including concentrating on work tasks forty hours per week, performing complex math, synthesizing complex information, and timely completing sensitive projects. He added the following explanatory note: "Randy's functional abilities are simply unreliably and unsustainable. He can function in work-related ways, just not in a predictable way." *Id.*

Similar restrictions were endorsed by Mr. Witt's treating sleep medicine specialist, Dr. Joshua Ramseyer. AR 777-78. He stated that due to Mr. Witt's idiopathic hypersomnia he would suffer from "daytime sleepiness and related symptoms including poor focus and attention." Dr. Ramseyer agreed that Mr. Witt would be unable to focus on work tasks forty hours per week, could only "sometimes" synthesize complex information, and could "probably not" complete sensitive tasks in a timely manner. *Id.*

With the appeal Mr. Witt also submitted statements from himself and from his partner of eight years, Erin. She provided a statement describing her life with the claimant. She explained that at times, Mr. Witt has required extensive assistance from her in all areas of life, including preparing simple meals, attending doctor visits, and the like. AR 782-83. She stated that more recently, Mr. Witt has improved somewhat in the sense that he is more able to care for himself and participate with light household chores such as taking out the trash or bringing in groceries from the car, but was still unable to do things like shopping for groceries, or preparing a meal. *Id.*

In his own personal statement, Mr. Witt explained his history with the various medications that have been prescribed to him, and the complicated trade-offs he navigated in terms of daytime and nighttime sleep, focus and concentration, and mood side effects. AR 779-81. He explained that on his current regimen, his mood is better, but his energy and initiative levels are still quite low, to the point that he still could not function at any full-time job, let alone his demanding regular occupation for Intel as a Software Development Engineer. *Id.*

This evidence submitted with Plaintiff's appeal clearly shows that he suffers from a medical condition, idiopathic hypersomnia, which causes excessive daytime sleepiness, such that Mr. Witt could not focus on his own occupation. Every provider to have met him in person, including ReedGroup's IME provider, Dr. Hurty, agrees that he is disabled from this demanding occupation. As such, Plaintiff should be found entitled to benefits.

## C. The Plan's appeal evidence fails to rebut disability.

While ReedGroup did not issue an appeal decision which can be considered by the Court, it did obtain two file review reports in the course of reviewing the appeal which are in the record. AR 874. However, neither of these file review reports supports a denial of benefits, even if ReedGroup had issued a timely appeal decision. The report of psychiatrist Dr. El-Atoum says nothing about Mr. Witt's limitations due to his sleep disorder, much like Dr. Swain's earlier report. AR 887-900. Neither of these psychology/psychiatry file reviews supports denial, particularly since ReedGroup ignored both file reviewers' recommendations to obtain a review from a sleep medicine specialist.

The other appeal file reviewer, Dr. Sanghvi, was a family medicine practitioner. AR 876-85. He stated that he could support no limitations for Mr. Witt based on the record he was provided. AR 883. But he appears to have no qualifications in sleep medicine, he apparently was not provided with Dr. Hurty's IME report (*see* AR 877, listing the records he was provided), and he does little to rebut the evidence of disability from the treaters' records and opinions. He also did not examine the claimant in person. Based on these combined factors, Dr. Sanghvi's opinion should receive no weight, and should not serve as a basis for rejecting benefits. *See Salomaa v. Honda Long Term Dis. Plan*, 642 F.3d 666, 676

(9th Cir. 2011) (overturning denial where "every doctor who personally examined Salomaa concluded that he was disabled" and insurance denial was based on file reviewer reports.); *Veronica L. v. Metro. Life Ins. Co.*, 647 F. Supp. 3d 1028, 1041 (D. Or. 2022) ("Courts routinely weigh opinions from treating physicians more heavily than they do reports and file reviews from paid consultants who never examine the claimant or talk to the claimant's treating physicians.") (internal citations omitted).

### D. Social Security exam reports support disability, should be considered.

As described in the facts section above, Plaintiff recently obtained copies of the reports of two independent exams he attended as part of his claim for Social Security Disability Insurance benefits. These exam reports further support Plaintiff's claim for LTD benefits, and although they were not submitted to ReedGroup as part of the claim proceedings, they may now be considered by the Court under established precedents.

In ERISA cases, the "administrative record" means the evidence that was before the administrator/insurer at the time it made its final benefits decision. *Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan*, 329 F. Supp. 2d 1198, 1212 n.11 (C.D. Cal. 2004) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir.1999)). Normally, ERISA benefit actions are decided solely on this record—no new evidence may generally be added after the final decision. *Bunger v. Unum Life Ins. Co. of Am.*, 299 F. Supp. 3d 1145, 1158 (W.D. Wash. 2018) (citing *Opeta v. Northwest Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007)).

However, in *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995) the Ninth Circuit determined that where, as here, the Court is

reviewing the benefit claim under the *de novo* standard, the Court has discretion to expand the record where "additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." In *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094 (9th Cir. 1999), an *en banc* panel of the Ninth Circuit re-affirmed *Mongeluzo*'s holding that a district court may consider additional evidence when necessary for adequate *de novo* review. And in *Thomas v. Oregon Fruit Products Co.*, 228 F.3d 991 (9th Cir. 2000), the Ninth Circuit remanded a case to the district court, holding that *de novo* review applied and instructing the district court that it had discretion to consider evidence outside the Administrative Record. *Id.* at 997.

Later, in *Opeta v. Northwest Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007), the Ninth Circuit identified factors that should be considered in determining whether to add evidence to the administrative record. These factors include whether the claim involved complex medical issues, whether the credibility of medical experts was at issue, if the record before the Court is incomplete, if the claimant could not have submitted the evidence during the administrative review, and whether, prior to ERISA, the claim would have been an insurance claim. These principles have since been followed in many cases to incorporate SSDI decisions into ERISA cases when the SSDI decision was rendered after the LTD plan administrator's final decision, and therefore could not have been included in the administrative record. *See O'Neal v. Life Ins. Co. of N. Am.*, 10 F. Supp. 3d 1132, 1136-37 (D. Mont. 2014); *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 12 F. Supp. 3d 1237, 1248, 1250 (N.D. Cal. 2014) (considering July 14, 2008, SSA determination after the administrator's final decision on June 5, 2008); and *Schramm v.*

*CNA Fin. Corp. Insured Grp. Ben. Program*, 718 F. Supp. 2d 1151, 1161, 1165 (N.D. Cal. 2010) (considering October 15, 2009, SSA determination after the administrator's final decision on March 12, 2009).

The Social Security exam reports in this case meet the standards identified in *Opeta*, 484 F.3d at 1217. These findings of independent examiners with no financial incentive to find for or against disability are highly probative. Mr. Witt's LTD claim involves complex medical issues. The dispute calls upon the Court to make a credibility determination between the doctors supporting Mr. Witt's claim, who treated and examined him in person, and ReedGroup's file reviewers, who opine he has no limitations whatsoever. The SSA examiners' findings that Mr. Witt has a reliable diagnosis of hypersomnolence disorder under the DSM-5 criteria, and that his symptoms prevent him from performing complex work such as his former job, are relevant evidence. While the January 2023 report of Dr. Hallenburg did exist before the closure of the LTD claim proceedings, it was not then available to Mr. Witt. The other report, that of Dr. Martinez, did not even exist until December of 2023, well after this case had been filed. The Court should therefore admit the Social Security exam reports to the record and consider them in support of Mr. Witt's claim for LTD benefits.

### E.  Remedy should be an immediate award of all benefits due.

Based on all of the evidence in this record, it should be abundantly clear that ReedGroup's denial must be overturned. Rather than a remand to reconsider the evidence, the Court should award benefits in this case. In *Petrusich v. Unum Life Insurance Company of America*, 984 F. Supp. 2d 1112, 1124 (D. Or. 2013), this court stated that:

In cases where the plan administrator has abused its discretion when denying a claim for disability that was supported by the record... courts have **ordered payment of benefits** on the ground that the administrator should not be given a second chance. *See, e.g., Cooper v. Life Ins. Co. of No. Amer.*, 486 F.3d 157, 172 (6th Cir. 2007)("Plan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits. They need to properly and fairly evaluate the claim the first time around.")....

If [remanding claims based on improper denials] were to become routine, it would pose a serious risk of simply allowing 'Mulligans' to sloppy plan administrators—at the expense of both the courts and plan participants and beneficiaries .... "It would be a terribly unfair and inefficient use of judicial resources to continue remanding a case to [the plan administrator] to dig up new evidence until it found just the right support for its decision to deny an employee her benefits."

The situation here is not one in which the Plan Administrator failed to apply the plan provisions properly. Instead, as noted, even under the most deferential abuse-of-discretion standard of review, Unum's denial of Petrusich's claim is the **result of a superficial and cursory review of the record and is unsupported by the record**.

The Court, therefore, concludes it should not permit Unum to have another "bite at the apple" and that an **award of benefits is appropriate**.

*Id.* (emphasis added) (quoting *Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 832 (7th Cir.2004)). *See also Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001) ("retroactive reinstatement of benefits is appropriate in ERISA cases where, as here, but for the insurer's arbitrary and capricious conduct, the insured would have continued to receive the benefits or where there was no evidence in the record to support a termination or denial of benefits.") (cleaned up).

As argued above, ReedGroup never had a proper basis for terminating Mr. Witt's benefits in the first place. All it had at the time of its original denial was the evidence on which it had already approved fifteen months of short-term and long-term disability

benefits, including Dr. Hurty's IME report, and a file review report from Dr. Swain that had

no bearing on disability. This alone supports reinstatement of Plaintiff's benefits

retroactive to the date of his termination, continuing to the present, and ongoing until

such time as the Plan identifies relevant evidence contradicting his disability. The situation

did not change on appeal, insomuch as Plaintiff submitted additional evidence supporting

disability, and ReedGroup's additional file reviews do not meaningfully rebut disability.

As of June 26, 2024, Mr. Witt's LTD claim must also satisfy the plan's "any

occupation" definition of disability. However, "any occupation" does not literally mean *any*

occupation - as defined in the LTD plan, it means any occupation which would earn Mr.

Witt at least 65% of his former pay. AR 4, 5 (plan document's definition of "any

occupation," definition of "gainful occupation.") Due to the nature of Mr. Witt's condition

and the fact that he requires daytime naps, is unable to concentrate on tasks, and is largely

unable to deal with supervisors, coworkers, and the public, it is highly unlikely that he

could perform any occupation at this time, much less one that would earn him 65% of his

former pay as an Intel Software Development Engineer.  The undersigned was unable to

locate any reference to Mr. Witt's pre-disability earnings amount in the claim record,

however, Mr. Witt reported receiving LTD payments of $7,241 before his claim was denied.

The LTD plan pays 65% of a claimant's former wage, or the same amount as the plan's

"gainful occupation" threshold. As such, Mr. Witt must be able to do a job that would earn

him roughly $87,000 per year to be disqualified from the LTD plan's "any occupation"

benefits. Any such job would require the performance of complex tasks, would require

attention and concentration throughout the day, and would likely require at least some

contact with supervisors, coworkers, and/or customers, all of which Mr. Witt is currently incapable of. As such, the Court should order the Defendant to pay not only the LTD plan's "own occupation" benefits, but also the "any occupation" benefits up to the present, and continuing until such time as Mr. Witt shows substantial signs of improvement.

The Court should also order the Defendant Plan to pay Plaintiff's attorney's fees in this case, as well as interest on the wrongfully withheld benefits. Plaintiff requests an opportunity to brief the matters of fees and interest at a later date, should the Court award him some or all of the relief he seeks.

Respectfully submitted,

BY:     *s/Jeremy L. Bordelon*
        Jeremy L. Bordelon, OSB No. 160789

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document was electronically filed using the

Court's CM/ECF system, which will automatically serve a copy upon all counsel of record.

Date: July 31, 2024.

BY:     *s/Jeremy L. Bordelon*_____
        Jeremy L. Bordelon, OSB No. 160789